946 A.2d 663

**In re Nomination Petition of Dr. Kimmika WILLIAMS–WITHERSPOON for the Office of Borough Council in the Third Ward of the Borough of Darby**

**Petition of Donald Deigh.**

Supreme Court of Pennsylvania.

May 2, 2008.

## *OPINION*

PER CURIAM.

In this appeal involving the 2007 primary election, this Court entered an expedited, dispositive order on May 1, 2007. That order granted allocatur in part, affirmed the Commonwealth Court order below, and noted that an opinion would follow. The order identified the single issue accepted for review as follows:

Whether the Commonwealth Court misapplied *In re Benninghoff*, 578 Pa. 402, 852 A.2d 1182 (2004) and *In re*

*Carroll,* 586 Pa. 624, 896 A.2d 566 (2006), and erred in reversing the trial court's grant of a petition to set aside Nomination Petition where Candidate admittedly failed to disclose known information on her Statement of Financial Interest and as required by the Ethics Act and the information required was not discernible to an elector from the information provided on Candidate's Statement of Financial Interest.

The effect of the affirmance was to reinstate the Candidate to the primary ballot.

Since our *per curiam* order was filed, this Court has had occasion to address timely-filed, but allegedly defective or incomplete, Statements of Financial Interests (SFIs), and the consequences of such defects, in *In re Paulmier,* 594 Pa. 433, 937 A.2d 364 (2007).

In the matter *sub judice,* Candidate Dr. Kimmika Williams–Witherspoon filed a timely nominating petition for a seat on the Borough Council in the Borough of Darby, Delaware County. Objector Donald Deigh sought to set aside the nomination petition alleging, *inter alia,* that Williams–Witherspoon had failed to file a full, complete, and accurate SFI pursuant to the Public Official and Employee Ethics Act, 65 Pa.C.S. §§ 1101–1113. The trial court granted Deigh relief, finding two defects in the SFI. First, in Box 9, Williams–Witherspoon had failed to list the interest rate for a Fidelity MBNA loan, and second, in Box 10, Williams–Witherspoon did not list that Temple University was a source of income of $1,300 or more. The trial court found these omissions to be fatal defects and set aside the nomination petition. Williams–Witherspoon appealed to the Commonwealth Court.

The Commonwealth Court reversed and directed that Williams–Witherspoon's name be placed on the May 2007 primary ballot. With regard to the Fidelity MBNA loan, the Commonwealth Court held that since Williams–Witherspoon was merely a co-signer, she was not required to disclose the interest rate on the SFIs. With respect to Box 10, the Commonwealth Court noted that Williams–Witherspoon had listed

Temple University as a primary employer in Box 6, even though she failed to identify that employment as a source of income in excess of $1,300 in Box 10. The Commonwealth Court reasoned that this circumstance was sufficiently analogous to the situation in *In re Benninghoff*, 578 Pa. 402, 852 A.2d 1182 (2004), as to warrant a conclusion that the defect was amendable.[1] Deigh filed a Petition for Allowance of Appeal and we granted limited review, as noted above.

In *Paulmier*, this Court held that "all defects related to the content of disclosures on a timely filed statement of financial interest are subject to timely amendment." In so holding, *Paulmier* overruled the *per curiam* affirmance in *In re Anastasio*, 573 Pa. 512, 827 A.2d 373 (2003) and its progeny, which held that material omissions from a timely-filed SFI were fatal defects. 937 A.2d at 371. Here, it is undisputed that Williams–Witherspoon timely filed her SFI. Because the decision we have already rendered in this case is in harmony with the now-governing law in *Paulmier*, we need not say any more in support of affirmance.

Former Chief Justice CAPPY and former Justices BALDWIN and FITZGERALD did not participate in this per curiam opinion.

Justice BAER files a concurring opinion.

Justice BAER, concurring.

I join in the Court's *per curiam* Opinion affirming, on the basis of our decision in *In re Paulmier*, 594 Pa. 433, 937 A.2d 364 (2007), the Commonwealth Court's order placing candidate, Dr. Kimmika Williams–Witherspoon's name on the 2007 primary ballot. As noted in the Court's Opinion, in *Paulmier* we overruled our prior *per curiam* order affirming *In re Anastasio*, 573 Pa. 512, 827 A.2d 373 (2003) and its progeny, holding that material omissions from a timely-filed statement

1. In *Benninghoff*, this Court held that the defect in a SFI was amendable where the candidate listed his occupation as a state representative in Box 6 but failed to disclose that occupation as a source of income in excess of $1,300.00 in Box 10.

of financial interest form constituted a fatal defect. *Paulmier,* 937 A.2d at 371.[1] Instead, as noted in the Court's *per curiam* Opinion, we held that "all defects related to the content of the disclosures on a timely filed statement of financial interest are subject to timely amendment." *Id.*

I write to emphasize a point that I believe was made by our Court in *Paulmier,* but is not reiterated in the Court's Opinion deciding the case before us. Specifically, in addition to holding that a timely filed statement of financial interest form is subject to timely amendment, we also noted that under the Ethics Act, "candidates must still file in good faith, even though they do have an opportunity to amend." *Id.* at 371 n. 3. Thus, "a good faith timely filer" is permitted to amend a non-compliant statement of financial interest in order to come into full compliance. *See, Id.* at 375 (Baer, J. concurring). I find the good faith component prerequisite to amendment crucial.

The policy behind *Anastasio* and its progeny was to compel those filing nominating petitions to disclose their financial affairs to better inform the public of its voting choices. *See* 65 Pa.C.S. § 1101.1(a) of the Ethics Act (declaring that the people have a right to be assured that the financial interests of holders of or nominees or candidates for public office do not conflict with the public trust and indicating that this provision shall be liberally construed to promote complete financial disclosure).

As the case law developed, this laudatory purpose was subverted by candidates, armed with our caselaw, seeking to disqualify their opposition on hyper-technicalities. *See Paulmier,* 937 A.2d at 375 (Baer, J., concurring) ("Strict interpretation of the fatality rule has resulted in the child's game of "gotcha" through far too many challenges based upon techni-

1. Although, as noted, we affirmed the Commonwealth Court's decision in *Anastasio* in a non-precedential *per curiam* order, we subsequently ratified the court's decision as precedent in our decision in *In re Littlepage,* 589 Pa. 455, 909 A.2d 1235 (2006). In *Paulmier,* we overruled that decision in conjunction with our rejection of the rule set forth in *Anastasio. See In re Paulmier,* 594 Pa. 433, 937 A.2d 364, 371 (2007).

cal omission"). This unanticipated use of the Ethics Act and our interpretive decisions, while arguably furthering that Act, is inconsistent with the Election Code's explicit policy of permitting all desirous of seeking public office the opportunity to do so. *See Petition of Ross,* 411 Pa. 45, 190 A.2d 719 (1963) (requiring liberal construction of the Election Code to protect a candidate's right to run for office and voters' rights to elect the candidate of their choice).

A basic rule of statutory construction requires that competing statutory provisions be read, if possible, to give both effect, *see* 1 Pa.C.S. § 1933, and in *Paulmier* we undertook the task of reconciling the Ethics Act and the Election Code. As explained above, we could not maintain our strict adherence to the fatal defect language of the Ethics Act [2] and still accommodate the Election Code, 25 P.S. § 2600 *et seq.* Concomitantly, to permit carte blanche amendment of financial statements in deference to the Election Code, would have granted license to unscrupulous candidates to omit intentionally material data from their financial statements, and, if caught, to supply such data without consequence. Such a result would be inconsistent with the language and purpose of the Ethics Act.

To accommodate the compelling but competing interests of both the Ethics Act and the Election Code, I believe we held in *Paulmier* that good-faith omissions in timely filed financial statements could be timely amended, but bad faith attempts to avoid the requirements of the Ethics Act unless and until caught, would, as before, result in a candidate's removal from the ballot. I recognize that if a challenger alleges bad faith, an original jurisdiction court will have to hear evidence and decide the issue. In most election dispute cases there is a hearing in any event, and assessing credibility and determining issue of good and bad faith is among the most basic fact-finding functions carried on daily by our justice system.

**2.** 65 Pa.C.S. § 1104(b)(3) (Failure to file the statement in accordance with the provisions of this chapter shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on the ballot).

Hence, I see no pragmatic basis to shy from this interpretation of *Paulmier*, and believe it will accommodate the language and purpose of both the Ethics Act and Election Code.

Here, because Petitioner Deigh made no averment that Williams–Witherspoon was in bad faith when she omitted data from her timely filed statement of financial interest, I join in the affirmance of the Commonwealth Court's order.